UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| JOSEPH DALE DAMRON<br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, *Acting Commissioner Of Social Security,*<br>    Defendant. | CIVIL NO. 2:16-CV-225-KKC<br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Joseph Dale Damron (DE 14) and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (DE 16). Damron brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("the Commissioner") denying his claim for and Supplemental Security Income, as provided under Title XVI of the Social Security Act. The Court, having reviewed the record, will affirm the Commissioner's decision.

**I. Overview of the Process**

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. Factual and Procedural Background

*A. Factual Background*

Plaintiff Joseph Damron was born in 1969. (Administrative Record ("AR") 42). He has a GED and, prior to his alleged disability, worked as a carpenter and handyman. (AR 42, 48-49). Damron applied for Supplemental Social Security Income on September 19, 2013 alleging a disability onset date of April 6, 2013. (AR 161-70). He claimed he suffered from an injured

right arm, Chrohn's disease, diabetes, a cyst on his spleen, asthma, and a bad limp in his right leg. (AR 190). Damron's application was denied initially and on reconsideration. (AR 89-102). Damron then made a timely request for a hearing before an ALJ. (AR 120-22). Damron's hearing was held on September 9, 2015 before ALJ Jonathan Stanley. Damron appeared at the hearing in person, accompanied by counsel, and testified on his own behalf. Christopher Brian, an impartial vocational expert, also appeared and testified. (AR 39-40). A written decision was issued November 17, 2015 denying Damron's claim. (AR 24-33). Damron now appeals that decision to this Court.

B. *The Administrative Decision*

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R. § 404.1520, and found that Damron's claim failed at step five. At step one, the ALJ found that Damron had not engaged in substantial gainful activity since August 9, 2013, the application date. (AR 26). At step two, the ALJ found that Damron had the following severe impairments:

> fractures of the radial head and right ulnar shaft/right Monteggia fracture, status post open reduction and internal fixation; post-surgical degenerative joint disease of right elbow with history of right lateral epicondylitis; history of right forearm stiffness with heterotopic bone, status post heterotopic bone excision and manipulation; nondisplaced fractures of the third and fourth proximal phalanx of right foot; history of dislocation with closed reduction of fifth metatarsal joint; avulsion fracture of great right toe; degenerative joint disease of right ankle; mild degenerative disc disease of the cervical, thoracic and lumbar spine; coronary artery disease, status post myocardial infarction and stents placement; hypertension; asthma; diabetes mellitus, type 2; and obesity.

(AR 26). At step three, the ALJ found that Damron's impairments, or a combination therefore, did not meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. (AR 28). Next, the ALJ found that Damron retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 416.967(b) except that he cannot climb ropes, ladders and scaffolds; can no more than occasionally push and pull using the

3

right upper extremity, reach using the right upper extremity, or operate hand controls using the right hand; and can no more than frequently climb stairs or ramps, handle and finger using the right hand, push and pull using the right lower extremity, balance, stoop, knell, crouch or crawl. The claimant must avoid concentrated exposure to temperature extremes and vibration and cannot work at unprotected heights or around hazards such as heavy equipment.

(AR 28). At step four, the ALJ found that Damron was unable to perform any past relevant work. (AR 31). Finally, at step five, the ALJ considered Damron's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, and found that there existed a significant number of jobs in the national economy that he could perform. More specifically, and considering additional limitations not represented by the Medical-Vocational Guidelines, the ALJ found that Damron could work as a cashier, in bench work assembly, and in packaging and sorting. (AR 32-33). Accordingly, the ALJ found that Damron was not disabled from Augst 9, 2013 through November 17, 2015. (AR 33).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Damron's request for review. (AR 1-6); *see* 20 C.F.R. § 422.210(a). Damron has exhausted his administrative remedies and filed a timely appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

**III. Standard of Review**

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of*

4

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

**IV. Analysis**

Damron challenges the ALJ's determination of his RFC on two bases. First, he claims the RFC finding was not supported by substantial evidence because the ALJ failed to accommodate certain impairments and did not include a second RFC finding for the period following his myocardial infarction. Second, he claims that the ALJ's credibility determination regarding his subjective complaints was also not supported by the evidence on record. These arguments are addressed in turn.

*A. The ALJ's RFC Finding*

Damron advances three arguments in support of his claim that the ALJ's RFC finding was not supported by substantial evidence. Each of these arguments is unavailing. First, he claims the ALJ failed to address his Reflex Sympathetic Dystrophy ("RSD") in his right arm and erred by allowing frequent use of Damron's right hand for handling and fingering. The ALJ, however, expressly considered Damron's RSD in assessing his RFC. (AR 30 ("On April 8, 2014 at Advance Pain Center, Dr. Damron [*sic*] indicated finding signs of reflex sympathetic dystrophy . . . ."). Moreover, other medical evidence on the record supported this determination. Specifically, the ALJ considered the findings of Dr. Watson that, while Damron could not completely bend his right arm, all other movements of that arm were normal and he had normal grip in both hands. (AR 30).

Similarly, Damron argues that the ALJ's RFC did not accommodate the severity of his coronary artery disease. The ALJ found that Damron could perform a range of light work; Damron claims that, because of his cardiac impairments, he should have been limited to sedentary work. Again, however, the ALJ expressly considered Damron's cardiac impairments, discussing the blockage which resulted, (AR 27), his examination in August 2014 when he was hospitalized for coronary artery disease, (AR 30), and his March 2015 treatment for chest pain, (AR 31). Even if this Court were to find that the ALJ did not fully consider Damron's coronary artery disease, remand would not be warranted. The vocational expert testified that a hypothetical individual of Damron's age, education, work experience and RFC, limited to sedentary work, could perform the job of office helper. (AR 68). Accordingly, even if this Court assumed the ALJ erred, such error would be harmless.

To the extent that Damron argues that the ALJ erred by not discussing all evidence on the record regarding these conditions, that argument also fails. The ALJ considered "all the evidence," (AR 24), and the "entire record," (AR 26), in making his RFC determination. It would not be reasonable to require the ALJ to discuss each element of the record specifically for the record to be considered in totality. *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 580, 591-92 (6th Cir. 1987).

Damron's final argument regarding his claim that the RFC finding was not supported by substantial evidence is that the ALJ should have included a second RFC finding for the period following his myocardial infarction on August 22, 2014. The ALJ, however, considered Damron's myocardial infarction when assessing his RFC. (AR 27, 30-31). Therefore, a second RFC finding was unnecessary. Damron's argument amounts to an improper request for this Court to reweigh the medical evidence regarding his myocardial infarction. *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.").

## B. The ALJ's Credibility Finding

Damron's second claim is that the ALJ erred by finding his subjective complaints were not fully credible. Pursuant to Social Security Ruling ("SSR") 96-7p, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, at *2. Damron claims that the ALJ's stated reasons for finding him not credible are invalid. He takes specific issue with five of the reasons given by the ALJ. First, he claims that the objective medical evidence supports a finding of disability, Second, he claims that the ALJ improperly applied a "sit and squirm" test when discussing his personal observations of Damron. Third, he claims that the ALJ failed to consider why he did not continue physical therapy and orthopedic treatment—Damron's insurance status was interrupted. Fourth, he claims the ALJ disregarded his reason for not using narcotics to treat his pain—Damron was concerned about addiction. And fifth, he claims the ALJ improperly considered his smoking habit as evidence that his reports of asthma were not credible.

The ALJ did not err in rejecting Damron's subjective complaints. The Sixth Circuit has held that "the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). The ALJ's reliance on these personal observations was proper and did not constitute application of the discredited "sit and squirm" test. Damron cites *Weaver v. Se'c'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1985) for the proposition that the ALJ's observations regarding ability to withstand pain at the hearing are not evidence of lack of pain. That is not what *Weaver* held. Instead, *Weaver* merely stands for the proposition that a claim for pain cannot be dismissed "solely on the ALJ's observations at the hearing." *Id.*

7

The ALJ did not solely rely on his personal observations of Damron. He also found that Damron's activities of daily living, which included rebuilding his motorcycle, washing dishes, sweeping the kitchen, and attending motorcycle and car shows, undermined his subjective complaints. (AR 29, 58, 61-62). Therefore, even assuming the ALJ erred by ignoring objective medical evidence that supported his subjective complaints or that the ALJ failed to consider why he did not seek certain treatments or cease smoking, the ALJ's decision was supported by substantial evidence and therefore must be affirmed. *See Colvin*, 475 F.3d at 730.

V. **Conclusion**

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. Plaintiff's motion for summary judgment (DE 14) is **DENIED**;

2. the Commissioner's motion for summary judgment (DE 16) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated April 12, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

8